IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIVA KITCHEN & BATH, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| CAPITAL DISTRIBUTING, INC., JOHN MICHAEL DAVIS a/k/a MICHAEL DAVIS a/k/a JOHN DAVIS, AND JENNIFER TYRRELL, | § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## ORIGINAL COMPLAINT AND APPLICATION FOR PERMANENT INJUNCTION

Plaintiff Kiva Kitchen & Bath, Inc. ("Kiva") files this Original Complaint and Application for Permanent Injunction against Defendants Capital Distributing, Inc. ("Capital"), John Michael Davis a/k/a Michael Davis a/k/a John Davis ("Davis"), and Jennifer Tyrrell ("Tyrrell"), collectively referred to as "Defendants."

## PARTIES

1. Kiva is a Delaware Corporation with its principal place of business located at 5907 Star Lane, Houston, Texas 77057. Kiva owns and operates through its wholly-owned subsidiaries a number of appliance stores in Texas and California which engage in the retail and wholesale sale and distribution of decorative hardware, decorative plumbing, household appliances, outdoor cooking equipment, and cabinetry.

2. Defendant Capital is a Texas corporation with its principal place of business located at 2910 North Stemmons Freeway, Dallas, Texas 75247. Capital may be served with

969251_1.DOC

process by serving its registered agent, John Michael Davis, at 2910 North Stemmons Freeway, Dallas, Texas 75247.

3. Defendant Davis is an individual who is a resident of the State of Texas, Capital's President, and, on information and belief, Capital's majority and controlling shareholder. Michael Davis may be served with process at his home address, 3831 Turtle Creek Boulevard, Apartment 8C, Dallas Texas 75219, or at his office address, 2910 North Stemmons Freeway, Dallas, Texas 75247.

4. Defendant Tyrrell is an individual who is a resident of the State of Texas, Capital's Marketing Manager, and on information and belief, is a shareholder of Capital. Jennifer Tyrrell may be served with process at her home address, 720 Cabernet Court, Grapevine, Texas 76051, or at her office address, 2910 North Stemmons Freeway, Dallas, Texas 75247.

## JURISDICTION

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338 because this action, in part, is an action for trademark infringement, dilution and cyberpiracy, brought pursuant to the Lanham Act, 15. U.S.C. §§ 1051, *et seq.* This Court also has jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121. This Court has jurisdiction over the Texas state law claims under principles of pendent and ancillary jurisdiction.

## VENUE

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## BACKGROUND

7. Kiva's appliance stores in Texas are: (1) AABC Appliance Gallery ("AABC"), which has two locations in Houston, Texas and has operated under and used the AABC name

since 1971; (2) Jarrell Appliance Gallery ("Jarrell"), which is located in Dallas, Texas and has operated under and used the Jarrell name since 1947; (3) Stone Appliance Gallery ("Stone") which is located in San Antonio, Texas and has operated under and used the Stone name since 1939; and (4) McNairs Appliance Gallery ("McNairs"), which has two locations in Austin, Texas and has operated under and used the McNairs name since 1939. AABC, Jarrell, Stone, and McNairs were originally separate family-owned and operated stores with well-established, favorable reputations built upon the goodwill and notoriety achieved throughout their many years of operation.

8.  Kiva purchased the AABC, Jarrell, Stone, and McNairs stores in a series of transactions beginning in the early 1990's. Kiva purchased and retained the "AABC," "Jarrell," "Stone," and "McNairs" trade names and marks as identifiers of the stores in order to maintain each stores' customer loyalty and recognition in the industry and marketplace. Since that time, Kiva has conducted business under and has continuously used "AABC Appliance Gallery," "Jarrell Appliance Gallery," "Stone Appliance Gallery," and "McNairs Appliance Gallery" as trade names and trademarks in the promotion, marketing, and sale of its goods, principally appliances.

9.  As a result of Kiva's promotion, advertising, sales and other uses of the "AABC Appliance Gallery," "Jarrell Appliance Gallery," "Stone Appliance Gallery," and "McNairs Appliance Gallery" names and marks, Kiva has, over time and at substantial expense, built a favorable reputation and a substantial amount of customer loyalty and goodwill as a supplier of appliances and other goods. Consequently, Kiva's use of these names and marks, building upon the stores' pre-existing notoriety and reputations, have come to be and remain widely and favorably regarded in the trade by Kiva's customers and suppliers throughout their respective

markets and beyond. Kiva has thus acquired extensive and valuable common law and statutory rights, and owns the exclusive right to use all such famous and distinctive marks and trade names for the sale and distribution of appliances and other products.

10. In addition to a number of other uses of these names and marks, Kiva maintains two websites, "appliancegallery.com" and "kivahome.com," through which AABC Appliance Gallery, Jarrell Appliance Gallery, Stone Appliance Gallery, and McNairs Appliance Gallery's customers and suppliers are able to access Kiva's stores and goods. Attached as Exhibits "A" and "B" to this Complaint are copies of Kiva's domain name registrations for "appliancegallery.com" and "kivahome.com," as they appear in the "WHOIS" domain name registration database accessible via the Internet address "http://who.securepaynet.net/whoischeck.aspx."

11. Capital is an appliance store located in Dallas, Texas and is Kiva's competitor. Davis is its President, Registered Agent, a Director, and on information and belief, Capital's majority and controlling owner. On information and belief, Tyrell is Davis' daughter, Capital's Marketing Manager, and is also a Capital owner.

12. Capital maintains its own website, "capitaldistributing.com," which was registered by Capital Distributing, Inc. on or about April 11, 2000. Attached as Exhibit "C" to this Complaint is a copy of the domain name registration for "capitaldistributing.com," as it appears in the "WHOIS" domain name registration database accessible via the Internet address "http://who.securepaynet.net/whoischeck.aspx." According to this registration, "Michael Davis" is the administrative contact for Capital's domain and Southwest Securities, Inc. is named as Capital's technical contact.

13.     On information and belief, in about December 2005, Defendants hatched an illicit scheme whereby Davis and Tyrrell, acting individually, on Capital's behalf, and/or in concert with one another, conspired to register, traffic in, and use certain Internet domain names which are identical to or confusingly similar to, and dilutive of Kiva's famous and distinct trade names and trademarks. Kiva has reason to believe that Defendants willfully and intentionally redirected Kiva's customers and suppliers to Capital's website through these Internet domain names in an effort, among other things, to: (1) deceive Kiva's customers and suppliers as to the origin, sponsorship, or approval of Capital's business and goods; (2) profit from Kiva's goodwill and reputation; and (3) profit from Kiva's customers and suppliers who already were, or had attempted to do business with Kiva, as well as Kiva's prospective customers and suppliers.

14.     On or about December 19, 2005, Defendants registered the domain name "jarrellappliance.com." Attached as Exhibit "D" to this Complaint is a copy of the domain name registration for "jarrellappliance.com," as it appears in the "WHOIS" domain name registration database accessible via the Internet address "http://who.securepaynet.net/whoischeck.aspx." Defendant "Michael Davis" is listed as the Registrant and the Administrative and Technical contacts for "jarrellappliance.com."

15.     On or about February 8, 2006, Defendants registered the domain name "jarrellappliancegallery.com." Attached as Exhibit "E" to this Complaint is a copy of the domain name registration for "jarrellappliancegallery.com," as it appears in the "WHOIS" domain name registration database accessible via the Internet address "http://who.securepaynet.net/whoischeck.aspx." Defendant "Michael Davis" is also listed as the Registrant and the Administrative and Technical contacts for "jarrellappliancegallery.com."

16. On or about February 10, 2006, Defendants registered the following three domain names: (1) "aabcappliancegallery.com;" (2) "mcnairsappliancegallery.com;" and (3) "stoneappliancegallery.com." Attached as Exhibits "F," "G," and "H" are copies of the domain name registrations for "aabcappliancegallery.com;" "mcnairsappliancegallery.com;" and "stoneappliancegallery.com," as they appear in the "WHOIS" domain name registration database accessible via the Internet address "http://who.securepaynet.net/whoischeck.aspx." Defendant "John Davis" is listed as the Registrant and the Administrative and Technical contacts for each of these domain names.

17. The domain names registered by Defendants under the names Michael Davis and John Davis—"jarrellappliance.com," "jarrellappliancegallery.com," "aabcappliancegallery.com," "mcnairsappliancegallery.com," and "stoneappliancegallery.com," are collectively referred to as the "Domain Names." On information and belief, Defendants registered, trafficked in and used the Domain Names, which Defendants knew were identical to Kiva's trade names and trademarks, with the specific intent to injure Kiva or with conscious indifference as to Kiva's rights in its trade names and trademarks and the risk of harm to Kiva resulting from Defendants' actions, in order for Defendants to profit from the redirection of Kiva's customers and potential customers (as well as countless unknown others) to Capital's own website. Until as recently as July 7, 2006, anyone who entered "jarrellappliance.com," "jarrellappliancegallery.com," "aabcappliancegallery.com," "mcnairsappliancegallery.com," or "stoneappliancegallery.com" into a Uniform Resource Locator ("URL") address bar on an Internet web browser was automatically directed to "capitaldistributing.com," Defendant Capital's website.

18. Kiva was unaware of Defendants' illegal domain name activities until recently when some of Kiva's suppliers, certain Kiva employees, and others had mistakenly entered one

of the Domain Names while attempting to access Kiva's website, landing at Capital's website instead. In early June 2006, Chris Phelps, an associate publisher of *D Home* magazine, contacted Larry Campbell, a Jarrell Appliance Gallery employee, to inform Mr. Campbell that she somehow ended up at Capital's website when she was attempting to access Kiva's. At that time, Mr. Campbell investigated Ms. Phelps' claim by entering Kiva's trade names into an Internet search engine in order to determine whether Capital's website would appear. Mr. Campbell's efforts to replicate Ms. Phelps' so-called "misdirection" to Capital's website were unsuccessful at that point.

19. On or about July 4, 2006, another Jarrell Appliance Gallery employee, David Weir, mistakenly typed "jarrellappliancegallery.com" into his URL address bar when attempting to access one of Kiva's websites and was immediately directed to Capital's website, "capitaldistributing.com." Mr. Weir retyped this same domain name several times into his URL address bar and was directed to Capital's website each time. On or about July 5, 2006, Mr. Weir informed Kiva of Capital's website activity.

20. Upon further investigation by Mr. Campbell on July 8 or 9, 2006, Mr. Campbell eventually determined that in order to be directed to Capital's website, the Domain Names must be entered directly into a URL address bar, not into an Internet search engine. Mr. Campbell's research also revealed that Defendants had registered other competitors' trade names as domain names and were similarly directing them to Capital's website, "capitaldistributing.com."

21. On information and belief, Tyrrell, Capital's Marketing Manager, has bragged to Kiva's suppliers and others about Capital's registration and use of Kiva's trade names and trademarks in this manner. Furthermore, when confronted by one of Kiva's suppliers about

Capital's deceptive tactics, Tyrrell has, on at least one occasion, stated: "Well, you snooze, you lose!"

## CAUSES OF ACTION

### COUNT I – TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

22.  Kiva incorporates the allegations contained in paragraphs 1 through 21 as though set forth herein in full.

23.  Defendants were well aware of Kiva's use and ownership of the trade names and trademarks relating to Kiva's AABC, Jarrell, Stone, and McNairs stores before usurping the same names and marks for the promotion and sale of Capital's goods and services. Defendants intended to trade on Kiva's favorable reputation and goodwill and Defendants intended to and, on information and belief, did divert sales and trade from Kiva.

24.  Defendants' unauthorized use of Kiva's famous and distinct trade names and trademarks in connection with the advertising, promotion and sale of Capital's goods and services is likely to cause confusion, or to cause mistake, or to deceive as to Capital's affiliation, connection, or association with Kiva, or as to the origin sponsorship, or approval by Kiva of Capital's goods, services and other commercial activity. Defendants' actions demonstrate their knowing and willful intent to trade on Kiva's goodwill and reputation, and they have caused dilution of Kiva's trade names and trademarks. Such conduct by Defendants constitutes palming off, unfair competition, and a violation of the Lanham Act, 15 U.S.C. § 1125(a).

25.  Defendants' use of Kiva's mark in the commercial advertising or promotion associated with Capital's website falsely represents to customers and potential customers as to the nature, characteristics, and qualities of Capital's goods, services, and commercial activities in violation of the Lanham Act, 15 U.S.C. § 1125(a), and are further acts of unfair competition.

Defendants' false and misleading representations concerning their products have been performed in a malicious, fraudulent, deliberate, or willful fashion.

26.  The unauthorized use by Defendants of Kiva's trade names and trademarks in connection with Capital's commercial activities removes from Kiva the ability to control the quality of products offered under its trade name and trademarks, and places Kiva's valuable goodwill and reputation in the hands of Defendants, over whom Kiva has absolutely no control. Defendants' unauthorized use of Kiva's trade names and trademarks allows Defendants to advertise and promote Capital's goods and services by receiving the benefit of the goodwill built up over the years by Kiva at great labor and expense, and to gain acceptance for Capital's goods and services based upon Kiva's reputation and goodwill.  This type of injury is irreparable, continuing and a type of injury for which Kiva has no adequate remedy at law.

## COUNT II – ANTIPIRACY UNDER THE LANHAM ACT

27.  Kiva incorporates the allegations contained in paragraphs 1 through 26 as though set forth herein in full.

28.  Defendants, acting individually and on behalf of Capital, registered, trafficked in, and used (and continue to use) the Domain Names, all of which are identical to or confusingly similar to Kiva's famous and distinct marks.  Defendants' registration, trafficking in, and use of the Domain Names is dilutive of Kiva's trade names and trademarks.  Defendants had and have a bad faith intent to profit from using Kiva's names and marks.  Defendants do not have trademark or other intellectual property rights in the names or marks used in the Domain Names.  The Domain Names do not consist of the legal names of the Defendants or of names that are commonly used to identify the Defendants.  Defendants have never used the names or marks embedded in the Domain Names in connection with the *bona fide* offering of any goods or

services, and Defendants use of Kiva's names and marks in this manner is not a *bona fide* noncommercial or fair use.

29.  Defendants intended to, and did actually divert Kiva's existing and potential customers and suppliers to Capital's website by redirecting such individuals and entities who were attempting to access one of Kiva's appliance store websites to the Capital website. Defendants redirected Kiva's existing and potential customers and suppliers in order to cause confusion in the marketplace and Defendants acted for commercial gain with the intent to harm Kiva's hard earned and favorable goodwill and reputation. Defendants' bad faith is further demonstrated by their actions in registering multiple domain names that are identical to and/or confusingly similar to the names and marks associated with Kiva's appliance stores, which were both distinctive and famous at the time Defendants registered the Domain Names.

30.  Defendants conduct constitutes a violation of the Anticybersquatting Consumer Protection Act ("ACPA") section of the Lanham Act, 15 U.S.C. § 1125(d). This type of injury is irreparable, continuing and a type of injury for which Kiva has no adequate remedy at law.

31.  Pursuant to 15 U.S.C. § 1125(d)(1)(D), Defendants are jointly and severally liable under the statute as the Registrants for the domain names "jarrellappliance.com," "jarrellappliancegallery.com, "aabcappliancegallery.com," "mcnairsappliancegallery.com;" and "stoneappliancegallery.com."

### COUNT III – VIOLATION OF THE TEXAS ANTIDILUTION STATUTE

32.  Kiva incorporates the allegations contained in paragraphs 1 through 31 as though set forth herein in full.

33.  Defendants' actions are injuring Kiva, are likely to continue injuring Kiva, and are diluting the distinctive quality of Kiva's trade names and trademarks. Kiva is entitled to

injunctive relief pursuant to the Texas Antidilution Statute, TEX. BUS. & COM. CODE §16.29 and Rule 680, *et seq.*, of the Texas Rules of Civil Procedure, in order to protect its names and marks.

### COUNT IV – TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONS

34. Kiva incorporates the allegations contained in paragraphs 1 through 33 as though set forth herein in full.

35. Defendants' actions in registering the Domain Names, and in redirecting Kiva's existing and potential customers of and suppliers to Capital's website, constitute tortious interference with existing and prospective business relations. Customers and suppliers and potential customers and suppliers that attempted to access Kiva's AABC, Stone, Jarrell, and McNairs stores via the Internet are either already engaged in a contractual relationship with Kiva or are likely interested in purchasing from or selling goods and services to Kiva's appliance stores. It is reasonably probable that Kiva would have sold appliances or other goods and services to Kiva's customers and prospective customers, and otherwise would have engaged in other business relationships with its suppliers and prospective suppliers that attempted to access one of Kiva's stores through the Domain Names, but were instead redirected to Capital's website.

36. Defendants have intentionally interfered with Kiva's existing and prospective business relations. Defendants intentionally registered the Domain Names and redirected customers, potential customers, suppliers, prospective suppliers, and countless others to Capital's website. Defendants engaged in such activity intending to obtain Kiva's existing customers and engage in other commercial relations that otherwise would likely have resulted in the purchase or supply of goods and services to or from Kiva. Defendants' interference with Kiva's business relationships was not an incidental result of conduct the Defendants were engaging in for another

legitimate purpose; Defendants' interference was willful and intentional and was specifically designed to obtain business from Kiva, Capital's competitor.

37. Defendants' conduct is independently unlawful and in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and Texas common law.

38. Defendants' interference with Kiva's business relationships is the proximate cause of Kiva's injuries, which resulted in actual damages and other losses for Kiva, including lost profits.

## COUNT V – UNFAIR COMPETITION

39. Kiva incorporates the allegations contained in paragraphs 1 through 38 as though set forth herein in full.

40. Defendants' actions, as set forth above, constitute unfair competition under the common law of the State of Texas, and are unlawful attempts by Capital to obtain access to and derive profits from Kiva's customers and suppliers, and prospective customers and suppliers. Defendants' actions have damaged Kiva and unjustly enriched Defendants. As a result of Defendants' unlawful behavior, Kiva has suffered actual damages and other losses, including: (1) lost profits; (2) damage to the favorable reputation and goodwill associated with Kiva's trade names and trademarks; (3) the loss of market value in Kiva's trade names and trademarks; and (4) costs which Kiva has or will have to incur attempting to restore some of the value associated with Kiva's trade names and trademark. The injury to Kiva caused by Defendants' actions is irreparable, continuing, and of a type for which Kiva has no adequate remedy at law.

## COUNT VI – CONSPIRACY

41. Kiva incorporates the allegations contained in paragraphs 1 through 40 as though set forth herein in full.

969251_1.DOC

12

42. In performing their actions, including those referred to in paragraphs 1 through 40 above, Defendants have engaged in a civil conspiracy against Kiva. By infringing Kiva's rights in their trade names and trademarks, tortiously interfering with Kiva's business relations and by participating in and engaging in unfair competition, Defendants have agreed upon and committed unlawful overt acts in the furtherance of Defendants' conspiracy to Kiva's detriment. Defendants' actions have proximately resulted in actual damages and other losses to Kiva.

## COUNT VII – ALTER EGO/PIERCING THE CORPORATE VEIL

43. Kiva incorporates the allegations contained in paragraphs 1 through 42 as though set forth herein in full.

44. In the alternative, as a result of Defendants' actions, including those referred to in paragraphs 1 through 42 above, Davis and Tyrrell are responsible for Capital's conduct and should be held liable individually. The corporate veil of Capital should be pierced to hold them liable as Capital's alter ego, which Davis and Tyrrell used as a sham to perpetrate a fraud. Capital was organized and operated as mere tools or business conduits of Davis and Tyrrell. Capital's corporate form was used by Davis and Tyrrell to justify their unlawful behavior. There was such unity between Davis, Tyrrell and Capital that the separateness thereof had ceased and holding only Capital responsible would result in injustice. By engaging in the activities described above, Davis and Tyrrell caused Capital to be used for the purpose of perpetuating and did perpetuate an actual fraud on Kiva primarily for the direct benefit of Davis and Tyrrell.

## REQUEST FOR PERMANENT INJUNCTION

45. Kiva incorporates the allegations contained in paragraphs 1 through 44 as though set forth herein in full.

46.     Kiva requests that a permanent injunction be entered to put an end to Defendants' conspiracy and acts conducted in the furtherance of the conspiracy, namely cyberpiracy, trademark infringement, dilution of trademarks, tortious interference with business relations, and unfair competition; and from further use of the Domain Names.

## JURY DEMAND

**47.     Kiva demands a trial by jury on all issues.**

WHEREFORE, Plaintiff Kiva Kitchen & Bath, Inc. respectfully requests the following:

Upon final jury trial, entry of a final judgment including:

(a)     finding that Defendants have violated the Anitcybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), by registering, trafficking in, and using the Domain Names, which are identical to, confusingly similar to, and dilutive of Kiva's famous and distinct trade names and trademarks, with a bad faith intent to profit from Kiva's names and marks;

(b)     finding that Defendants have directly infringed Kiva's trade names and trademarks in violation of 15 U.S.C. 1125(a);

(c)     finding that Defendants use of Kiva's trade names and trademarks was willful, intentional, and malicious;

(d)     permanently enjoining Defendants, their subsidiaries, affiliates, officers, agents, servants, employees, and participants with them who receive actual notice of the order by personal service or otherwise, from directly infringing and from inducing infringement of the trade names and marks arising out of the names of Kiva's appliance stores;

(e)     finding that this case is "exceptional" within the meaning of 15 U.S.C. § 1117;

(f)     awarding Kiva the damages to which it is entitled due to Defendants' actions and infringement of Kiva's trade names and trademarks, and trebling such damages for the deliberate and willful nature of the infringement, and awarding interest thereon in the form of both pre-judgment interest and post-judgment interest;

(g)     finding that the amount of damages awarded or a recovery based on profits is inadequate and awarding Kiva three times such amounts pursuant to 15 U.S.C. § 1117(a);

(h)     alternatively, awarding Kiva statutory damages pursuant to 15 U.S.C. § 1125(d) in an amount of $100,000.00 per domain name;

(i)     awarding Kiva its costs and expenses herein, and its reasonable attorneys fees under 15 U.S.C. § 1117;

(j)     finding that Defendants have conspired and committed acts of tortious interference with existing and prospective business relations, unfair competition in violation of the Lanham Act and Texas common law, and that Defendants have diluted Kiva's trade names and trademarks;

(k)     permanently enjoining Defendants, their subsidiaries, affiliates, officers, agents, servants, employees, and participants with them who receive actual notice of the order by personal service or otherwise from using Kiva's trade names, trademarks, or any other mark or designation confusingly similar thereto or a colorable imitation thereof in connection with the promotion, advertising, offering, manufacturing, distributing or selling of Defendants' products and services;

(l)     providing that Defendants be directed to file with this Court, within thirty (30) days after entry of final judgment, a written statement under oath setting forth in detail the manner in which Defendants have complied with the injunction;

(m) awarding Kiva the damages to which it is entitled due to Defendants' conspiracy, dilution of trademarks, tortious interference with existing and prospective business relations, and unfair competition, and awarding interest thereon in the form of both pre-judgment and post-judgment interest;

(n) ordering that an equitable accounting be directed to determine Defendants' profits resulting from their conspiracy and acts of cyberpiracy, trademark infringement, tortious interference with existing and prospective business relations, and unfair competition and that such profits be paid over to Kiva as an equitable remedy;

(o) finding that Defendants acted with the specific intent to cause substantial injury to Kiva or with conscious indifference to the risk of injury to Kiva and awarding exemplary damages to Kiva, pursuant to TEX. CIV. PRAC. & REM. CODE §§ 41.001, *et seq.*, to penalize Defendants for their malicious conduct and to deter Defendants from engaging in the same or similar conduct in the future;

(p) finding that Defendants' actions constitute aggravated conduct under the Texas Damages Act, TEX. CIV. PRAC. & REM. CODE § 41.001, *et seq.*, and awarding exemplary damages to Kiva to penalize Defendants for their conduct and to deter Defendants from engaging in the same or similar conduct in the future;

(q) awarding Kiva its lost profits resulting from Defendants' unlawful conduct;

(r) awarding Kiva special damages associated with the loss of goodwill resulting from Defendants' unlawful conduct;

(s) awarding Kiva economic damages for the loss of market value in Kiva's trade names and trademarks resulting from Defendants' unlawful conduct, as well as the costs

associated with Kiva's attempts to rehabilitate the market value associated with Kiva's trade names and trademarks;

(t) finding that Capital's corporate veil should be pierced and that Davis and Tyrrell are individually responsible for any damages awarded by the Court;

(u) ordering the forfeiture or cancellation of the Domain Names and the transfer of the Domain Names to Kiva pursuant to 15 U.S.C. § 1125(d)(1)(C); and

(v) granting Kiva such other and further relief, in law or in equity, both general and special, to which Kiva may be entitled.

Respectfully submitted,

By: _____/s/_____
David L. Burgert
Federal I.D. Nº 2084
State Bar Nº 03378300
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone: (713) 226-6000
Facsimile: (713) 228-4935
E-Mail: dburgert@porterhedges.com

***ATTORNEYS FOR PLAINTIFF***
***KIVA KITCHEN & BATH, INC.***