## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **KIVA KITCHEN & BATH, INC.,** | § § | United States Courts<br>Southern District of Texas<br>FILED |
| **Plaintiff/Counter-Defendant,** | § § § | JAN 3 1 2008 |
| **v.** | § § | Michael N. Milby, Clerk |
| **CAPITAL DISTRIBUTING, INC.,**<br>**JOHN MICHAEL DAVIS a/k/a**<br>**MICHAEL DAVIS a/k/a JOHN**<br>**DAVIS, and JENNIFER TYRRELL,** | § § § § § | **CIVIL ACTION NO. 4:06-cv-02562** |
| **Defendants/Third Party**<br>**Plaintiffs/Counter-**<br>**Plaintiffs,** | § § § § | **JURY TRIAL DEMANDED** |
| **and** | § § | |
| **BRINGMEBIZ, INC., and TODD**<br>**MCCALLY** | § § § | |
| **Defendants/Third Party**<br>**Defendants.** | § § | |

## PLAINTIFF'S BENCH BRIEF REGARDING STATUTORY
## DAMAGES AND ATTORNEYS' FEES

Kiva files this bench brief regarding Statutory Damages and Attorneys' Fees

recoverable by Kiva due to the cybersquatting of the Capital Defendants.

# I.  <u>INTRODUCTION</u>

This suit is based on Capital Defendants' registration of several of Kiva's trade names as domain names, and Capital's subsequent forwarding of visitors attempting to access Kiva's sites to Capital's own commercial website.  Kiva has sued Capital Defendants under the Anticybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. § 1125(d) (2000).  Federal law allows a plaintiff under this Act to "elect, at any time before final judgment," to recover damages from $1,000 to $100,000 "per domain name, as the court considers just."  15 U.S.C. § 1117(d) (2000).

Additionally, federal law permits courts to award reasonable attorney fees to the prevailing party in "exceptional cases."  15 U.S.C. § 1117(a) (2000).

## II. <u>MEMORANDUM OF LAW</u>

### A.  **Statutory Damages are Available To Kiva As An Alternative to Actual Damages**

While appellate jurisprudence on statutory damages for violation of the ACPA is thin, federal district courts across the country have exercised their discretion to award plaintiffs statutory damages up to the $100,000 per domain name statutory limit.

Some courts award the maximum amount when the plaintiff's actual damages are difficult or impossible to determine.  *See, e.g., Elecs. Boutique*

2

*Holdings Corp. v. Zuccarini*, No. Civ.A. 00-4055, 2000 WL 1622760, at *7-8 (E.D. Pa. Oct. 30, 2000) (Exhibit 1) (emphasizing that plaintiff's actual damages were "incalculable" and awarding plaintiff $100,000 per infringing domain name, for a total of $500,000).

Another common thread in those cases where the court awards the maximum damage amount is the presence of defendants that are promoting products or services through the infringing domain names that are the same as or similar to the products or services sold by the plaintiffs—*i.e.*, defendants competing directly with plaintiffs by using the plaintiff's marks against them. For example, in *Malletier v. Veit*, the defendants registered the domain name "LouisVuitton-replicas.com," which infringed on a protected mark of one of the plaintiffs. 211 F. Supp. 2d 567, 574 (E.D. Pa. 2002) (Exhibit 2). Through the infringing domain, the defendants sold counterfeit Louis Vuitton bags bearing Louis Vuitton trademarks. *Id.* at 575. The court ruled that the defendants thus "unfairly benefi[ted]" from Louis Vuitton's advertising, reputation, and goodwill, all while competing with its products. *Id.* at 577. "[I]n light of" these "egregious acts" by the defendants, the court awarded Louis Vuitton the full $100,000 for the infringing domain. *Id.* at 585.

Similarly, in *Graduate Management Admission Council v. Raju*, the defendant registered "GMATplus.com" and "GMATplus.net," infringing on the

plaintiff's "Graduate Management Admissions Test" ("GMAT") mark.   267 F.

Supp. 2d 505, 508-09 (E.D. Va. 2003) (Exhibit 3).   The defendant, Raju, was using

the infringing domains to sell unpublished questions used on previous GMATs. *Id.*

at 509.   The court found that Raju "attempted to create the false impression that he

is affiliated with, sponsored by, approved by and/or endorsed by" the plaintiff, the

Graduate Management Admission Council. *Id.* at 509-10.   Additionally, the court

found that "Raju's use of a mark similar to that owned by GMAC, for services

identical to those offered by GMAC," was "likely to cause confusion among

prospective customers." *Id.* at 510.   Based on this "blatant" infringement of the

plaintiff's mark, the court awarded the maximum statutory damages to the

plaintiff:  $100,000 per domain for a total of $200,000. *Id.* at 512-13.

In *Aztar Corp. v. MGM Casino*, Aztar, owner of the "Tropicana" mark and

the Tropicana casino, sued MGM for, among other things, registering the domain

name "tropicanacasino.com," operating an online casino under that name, and

placing metatags reading "Tropicana" on its website so that web search engine

results would include links to the MGM Casino website. No. NO. 00-833-A., 2001

WL 939070, at *3-4 (E.D. Va. Apr. 9, 2001) (Exhibit 4).   The court found in favor

of the plaintiff and characterized MGM's actions as a "bad faith attempt to deceive

Internet consumers and profit from the good will Plaintiff has generated in its

4

famous TROPICANA mark." *Id.* at *6. Accordingly, the court awarded the full statutory damages amount of $100,000 to Aztar. *Id.*

Finally, in *Mirage Resorts, Inc. v. Cybercom Productions*, the defendant Cybercom had registered the domain name "goldennugget2000.com" despite the plaintiff's ownership of the "Golden Nugget" mark. 228 F. Supp. 2d 1141, 1142-43 (D. Nev. 2002) (Exhibit 5). The defendant had used the "goldennugget2000.com" domain to host a pornographic website, with links to online casinos that were not affiliated with the plaintiff's Golden Nugget Casino. *Id.* at 1142. Considering these facts, the court awarded the plaintiff the full $100,000 as "just." *Id.*

### B.   Attorneys' Fees for "Exceptional" Cases

The Fifth Circuit standard for deciding when a case is "exceptional" so as to allow an award of attorneys' fees is when "'the violative acts can be characterized as malicious, fraudulent, deliberate, or willful.'" *Pebble Beach Co. v. Tour 18 I Limited*, 155 F.3d 526, 555 (5th Cir. 1998) (Exhibit 6) (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996) (Exhibit 7). This echoes the language from the Senate Report accompanying the legislation. *See* S. REP. NO. 93-1400, at 2 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133 (giving the same language). To meet this standard, the prevailing party typically must show "'a high degree of culpability on the part of the infringer, for example, bad faith or

5

fraud.'"  *Pebble Beach*, 155 F.3d at 556 (Exhibit 6) (quoting *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992) (Exhibit 8).

When a defendant's acts of infringement are deliberate and intentional and designed to prey on a competitor's goodwill and customers, a finding that such a case is "exceptional" under the Lanham Act and an award of attorneys' fees is both warranted and justified.  *See, e.g., Delilah Media Group, L.P. v. Raymer*, 2005 U.S. Dist. LEXIS 13253 (N.D. Tex. June 30, 2005) (Exhibit 9) (holding that bad faith registration of a domain name with intent to profit from the goodwill of the trademark owner supported finding of exceptionality and an award of attorneys' fees); *Pebble Beach v. Tour 18 I Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996) (Exhibit 6) (explaining that while deliberate copying does not *per se* establish that a case is exceptional, the Court acknowledged that preying conduct, particularly when combined with deliberate behavior, supports a finding of exceptionality).

Notably, in most of the cases across the country in which a court awarded the maximum in statutory damages, the court, using standards identical or similar to the Fifth Circuit's, has also found the case "exceptional" and awarded attorneys' fees.  *See, e.g., Elecs. Boutiques Holdings*, 2000 WL 1622760 at *8 (Exhibit 1); *Malletier*, 211 F. Supp. 2d at 585 (Exhibit 2); *Aztar*, 2001 WL 939070 at *6 (Exhibit 4); *Mirage Resorts*, 228 F. Supp. 2d at 1142-43 (Exhibit 5).

6

1256007v1

Infringement does not have to be intentional for the case to qualify as "exceptional" for attorneys' fees under the statute.  In *Neles-Jamesbury, Inc. v. Bill's Valves*, the court pointed out that it was not limited to considering the jury's findings the intentional nature of the infringement when rendering a decision on exceptionality and attorneys' fees.  974 F. Supp. 979, 984 (S.D. Tex. 1997) (Exhibit 10).  In *Bill's Valves*, despite the jury's finding that the infringement was not intentional, the court found that the infringer had acted in "bad faith" and with "reckless disregard of [the p]laintiff's rights" when it had sold reconditioned valves manufactured by the plaintiff without stamping them as "reconditioned."  *Id.* Consequently, the "bad faith" standard in Texas federal courts can be met by merely showing that the defendant recklessly violated the plaintiff's trademark rights, even without necessarily intending to infringe them.

## III.  **CONCLUSION**

Trial courts across the country have not been reluctant to award plaintiffs the maximum amount of statutory damages permitted for cybersquatting when, for instance, the determination of the amount of actual damages suffered by the plaintiff is difficult or "incalculable."  Considering the extreme difficulty Kiva has had in trying to wrest revenue and other financial figures from Capital Defendants to calculate actual damages, that fact has special resonance in this case. Additionally, many of the maximum statutory award cases involve a defendant

7

using the plaintiff's mark in a domain name to compete directly with the plaintiff—just as Capital did with Kiva's names.

This has particular relevance to this case because Kiva and Capital are direct competitors and it is undisputed that Capital was forwarding web page requests for Kiva trade name domains to its own commercial website.  Capital was profiting from Kiva's goodwill across its many appliance brand names, and it did this by *knowingly registering its own competitor's trade names* and "forwarding" those domains in bad faith.  Thus, Capital's behavior meets the standard for both the maximum award of statutory damages *and* a finding that this is an "exceptional" cases permitting the award of attorneys' fees to Kiva.

Dated: January __, 2008.

Respectfully submitted,

By: _____
David L. Burgert
Attorney-in-Charge
Federal I.D. No. 2084
State Bar No. 03378300
Porter & Hedges, LLP
1000 Main Street, 36th Floor
Houston, TX 77002-6336
Telephone:  (713) 226-6000
Facsimile:  (713) 228-1331
E-Mail:  dburgert@porterhedges.com

***ATTORNEYS FOR PLAINTIFF***
***KIVA KITCHEN & BATH, INC.***

OF COUNSEL:

PORTER & HEDGES, L.L.P.
Adam D. Pogach
Federal I.D. No. 634567
State Bar No. 24048734
1000 Main Street, 36th Floor
Houston, TX 77002-6336
Telephone:  (713) 226-6000
Facsimile:  (713) 228-1331
E-mail:  apogach@porterhedges.com

9

## CERTIFICATE OF SERVICE

This is to certify that on the 3 day of January, 2008, a true and correct copy of the above pleading was properly forwarded to the following counsel of record via hand delivery.

Mark A. Hendrix
MADDENSEWELL, LLP
Four Hickory Centre
1755 Wittington Place, Suite 300
Dallas, Texas 75234
Telephone: (972) 484-7780
Facsimile: (972) 484-7743

Jami Meador
STRASBURGER & PRICE, LLP
1401 McKinney Street, Ste. 2200
Houston, Texas  77010-4035
Telephone: (713) 951-5600
Facsimile: (713) 951-5660

David L. Burgert

1256007v1