UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIVA KITCHEN & BATH, INC. | § § § | CLERK, U. S. DISTRICT COURT SOUTHERN DISTRICT OF TEXAS |
| Plaintiff, | § § | F I L E D |
| vs. | § § | 2/4/08 |
| | § | MICHAEL N. MILBY, CLERK |
| CAPITAL DISTRIBUTING, INC., JOHN MICHAEL DAVIS, a/k/a MICHAEL DAVIS, a/k/a JOHN DAVIS, and JENNIFER TYRRELL, | § § § § § § | BY DEPUTY No. 4:06--cv-02562 |
| Defendants/Third-Party Plaintiffs, | § § § | |
| vs. | § § | |
| BRINGMEBIZ, INC. and TODD McCALLY, | § § § | |
| Third-Party Defendants. | § § | |

CAPITAL DEFENDANT'S REPLY BRIEF TO PLAINTIFFS
BENCH BRIEF ON THE APPLICABILITY OF THE ACPA'S
"SAFE HARBOR" PROVISION

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants, Capital Distributing, Inc., John Michael Davis, and Jennifer Tyrrell (collectively hereinafter referred to as the "Capital Defendants") file this Trial Brief in Response to Plaintiff's Bench Brief on the Applicability of the ACPA's Safe Harbor Provision to the Capital Defendants, and in support would show unto the Court the following:

## INTRODUCTION

The Anti-cybersquatting Consumer Protection Act (ACPA) was enacted in response to concerns over the proliferation of cybersquatting -- the internet version of a land grab. The practice of cybersquatting occurs when a person registers "well-known brand names as internet domain names' in order to force the rightful owners of the marks 'to pay for the right to engage in electronic commerce under their own brand name." S.Rep. No. 106-140, at 5. A finding of "bad faith intent to profit" is an essential prerequisite to finding an ACPA violation. 15 U.S.C. § 1125(d)(1)(A)(i). Most importantly, the ACPA contains a "safe harbor provision" which states that a bad faith intent "shall not be found in any case in which the court determines that the person believed and had a reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

Moreover, in its analysis of the ACPA's "safe harbor" provision, the Plaintiff is correct that Federal courts read the statute properly and apply it directly to require an objectively reasonable belief that use of the mark was "fair or otherwise lawful." However, Plaintiff is wrong in telling this Court that "as a matter of law" commercial use of another's mark disqualifies a defendant from the safe harbor provision.

## ARGUMENT AND AUTHORITIES

A.  **Commercial Use Alone Does Not Preclude Defendant From Seeking Protection Under the ACPA's Safe Harbor Provision.**

Plaintiff apparently reads the ACPA as imposing strict liability on a defendant who uses another's mark in a domain name. Plaintiff's argument is misplaced and unsupported. Plaintiff essentially asks this Court to render the "safe harbor" provision inapplicable upon a finding that the domain name was registered for commercial use. The ACPA does not operate that way, and the cases Plaintiff cites do not support such a construction.

In all cases, the ACPA encourages courts to make a reasoned application of the law to the totality of the circumstances. *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 270 (4th Cir. 2001). It further mandates that if a person "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful," a court shall not find a bad faith intent to profit. 15 U.S.C. §1125(d)(1)(B)(ii) (emphasis added). Therefore, the Court must consider the entirety of the evidence to determine whether the Defendant believed and had reasonable grounds to believe that the use of the domain name was fair or otherwise lawful. Ultimately, Plaintiff's argument attempts to take away the court's function of reviewing the totality of the evidence in making a determination of whether the safe harbor provision is applicable.

Plaintiff initially relies on *March Madness Athletic Association, L.L.C. v. Netfire, Inc.*, 310 F.Supp.2d 786 (N.D. Tex. 2003), for the contention that, because the defendants commercially exploited "March Madness," *as a matter of law* they had no reasonable grounds to believe their use was fair as defined by

the statute. Plaintiff's Bench Brief at p. 3. First and foremost, the Northern District's opinion in *March Madness* never once uses the phrase "as a matter of law" in connection with its analysis of the safe harbor provision. Instead, the Court found, from the circumstances of the case, that the defendants ". . . certainly did not have 'reasonable grounds' to believe their use of marchmadness.com was a fair use. It was a commercial use seeking to exploit the goodwill at the core of the NCAA's (and now MMAA's) rights to March madness, namely, the NCAA Tournament." *Id.* at 814. In other words, while the Court concluded that the safe harbor provision did not preclude liability against the defendants, the Court clearly based this finding upon the totality of the circumstances indicating that the defendants could not reasonably have believed they were entitled to use the plaintiffs' trademarks.

Plaintiff also relies on the 4th Circuit opinion in *Virtual Works, Inc. v. Volkswagen of America, Inc.*, for the contention that, because Defendant used the infringing domain name as a commercial website, it could not *as a matter of law* use the ACPA's safe harbor provision. 238 F.3d 264 (4th Cir. 2001). This contention again is in direct conflict with the language in the case. Specifically, the 4th Circuit noted that "the openly admitted hope of profiting from consumer confusion of *vw.net* with the VW mark disqualifies Virtual Works from the ACPA's safe harbor." *Id.* at 270. Specifically, the evidence showed that Virtual Works chose *vw.net* over other domain names not just because "vw" reflected the company's own initials, but also because it foresaw the ability to profit from natural associations of *vw.net* with the VW mark." *Id.* at 269-70. In addition, the

Court based its decision to hold the safe harbor provision inapplicable upon direct evidence that Virtual Works attempted to sell the site to VW, and "told Volkswagen that *vw.net* would be sold to the highest bidder if Volkswagen did not make an offer within twenty-four hours ... [and] that others would jump at the chance to own a valuable domain name like *vw.net* because internet users would instinctively associate the site with Volkswagen." *Id.* at 270. Nowhere in the 4th Circuit's holding does it support or in any way acknowledge Plaintiff's contention that "because Capital Defendants have used the Kiva trade name domains commercially, they cannot use the ACPA 'safe harbor' defense." Plaintiff's Bench Brief at p. 5.

In contrast, the 4th Circuit in *Virtual Works, Inc.* expressly rejected Plaintiff's baseless argument. The court stated, "the fact that a domain resembles a famous trademark, for example, hardly in and of itself establishes bad faith." *Id.* at 269. Further, the Court noted that to view the mere use of such famous names as tantamount to bad faith would chill internet entrepreneurship with the prospect of endless litigation. *Id.* Accordingly, an ACPA analysis must go further than just determining whether a party registered a domain name resembling a famous trademark. Courts must examine the totality of the circumstances to determine whether the Defendant acted in bad faith or whether the Defendant reasonably believed and had objectively reasonable grounds to believe use of the domain name was fair or otherwise lawful. *Id.* at 270.

In addition, some federal courts have referred to the safe harbor provision as "an 'escape clause' to those whose conduct would otherwise constitute bad

faith. . . ." *Northern Light Technology v. Northern Lights Club*, 236 F.3d 57, 64 (1st Cir. 2001). The federal district courts sitting in Texas, while never having examined or applied it directly, have mentioned the *Northern Light Technology* decision in dicta at least three times to note its availability. *See, e.g., E. & J. Gallo Winery v. Spider Webs LTD*, 129 F.Supp.2d 1033, 1044 (S.D.Tex. 2001); *Ultimate Living Intern., Inc. v. Miracle Greens Supplements, Inc.*, 2007 WL 14258, *7 (N.D.Tex. Jan 03, 2007); *Registral.com, LLC v. Fisher Controls Intern. Inc.*, 2001 WL 34109376, *9 (S.D.Tex. 2001).

In accord, the court in *Nordic Inn Condominium Owners' Ass'n v. Ventullo* 151 N.H. 571 (N.H. 2004) pointed out that the trial court must have found some evidence of bad faith intent in order to apply the safe harbor provision in the first place. *Id.* at 585-586. The court further noted that, because the safe harbor functions as an "escape clause," a finding that the factors did not indicate bad faith intent would have eliminated the need to employ the safe harbor. *Id.* at 586 (citing *TMI, Inc. v. Maxwell,* 368 F.3d 433, 440 (5th Cir.2004) (determining that ACPA claim failed without reaching the safe harbor provision)). This language is further inconsistent with Plaintiff's notion that a defendant can be disqualified from the protections of the safe harbor *as a matter of law*. Rather, courts must evaluate the facts of the case to determine whether the defendant's belief that their conduct was fair or lawful was objectively reasonable.

**B. The Capital Defendants are entitled to protection under the ACPA's safe harbor provision.**

As discussed throughout this memorandum, a court shall not find a bad faith intent if the Defendant "believed and had reasonable grounds to believe that

the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). As noted in Plaintiff's Brief, in determining the applicability of the safe harbor provision to a given case, "The court should place emphasis on the phrase "had *reasonable grounds* to believe" that the conduct was lawful, focusing primarily upon the objective reasonableness and credibility of the defendant's professed ignorance of the fact that its conduct was unlawful." *Audi AG v. D'Amato* 469 F.3d 534, 549 (6th Cir. 2006) (quoting J. Thomas McCarthy, McCarthy on Trademarks § 25.78 (4th ed. 2004)). To this point, a careful analysis of the evidence presented in this case shows that the Capital Defendants had objectively "reasonable grounds" to believe that the use of infringing domain names was lawful.

The most compelling evidence of such "reasonable grounds" was the Defendants' justifiable reliance on the advice of Todd McCally and BringMeBiz who were hired as "experts" to assist Defendants in the optimization of their website. The evidence has shown that the Capital Defendants' relied on Mr. McCally and BringMeBiz's expertise in the field when making decisions pertaining to the optimization of their website. Further, Mr. McCally himself testified to the fact that the Capital Defendants, specifically Mr. Davis and Mrs. Tyrell, were not familiar with this field nor where they particularly internet savvy. Plaintiff's expert witness, Mr. Schipul, testified that he considered Mr. McCally an expert and acknowledged the corresponding obligation on Mr. McCally to give sound advice to his clients. Therefore, in light of the Defendant's undisputed lack

of knowledge in the particular field, it was reasonable for them to rely on the advice and consultation of an "expert" in the relevant field.

Most importantly, the evidence is undisputed that Mr. Davis specifically asked Mr. McCally whether the registration of the infringing domain names was lawful. In response, Mr. McCally negligently led the Defendants to mistakenly believe that this conduct was indeed lawful. Accordingly, pursuant to the advice of an "expert" with purported knowledge in the field, Mr. Davis registered the infringing domains under the reasonable belief that it was lawful. Under the facts presented, a reasonable jury could conclude that the defendants had objectively reasonable grounds to believe their actions were lawful.

Lastly, in reference to the ACPA's safe harbor provision, J. Thomas McCarthy noted that this statutory provision might be dubbed the "pure heart and empty head defense" because it rewards a Defendant who mistakenly believed that their actions were lawful. J. Thomas McCarthy, McCarthy on Trademarks § 25.78 (4th ed. 2004). These comments are instructive in the present case. The safe harbor provision was enacted to protect people, like the Capital Defendants, whose actions were not blatantly flagrant, but who were mistakenly led to believe their actions were lawful.

In addition, courts analyzing the viability of the safe harbor provision in a particular case have found it was inapplicable when the Defendant continued the infringing use after receiving notice that it was unlawful. *Audi AG v. D'Amato* 469 F.3d 534, 539, 549-550 (6th Cir. 2006); *Shields v. Zuccarini*, 254 F.3d 476, 485 (3rd Cir. 2001) (Defendant was on notice that his use of the domain names was

considered unlawful when he received the cease and desist letters from Shields in December 1999. Zuccarini continued to use the infringing domain names for commercial purposes until Shields filed this lawsuit); *See also Nordic Inn Condominium Owners' Ass'n v. Ventullo*,151 N.H. 571, 864 A.2d 1079, 1093 (N.H. 2004)(Plaintiff's failure to notify the Defendant of the unlawful use supports the finding that the defendants *reasonably* believed that their actions were lawful).

Likewise, the evidence in this case reveals that Plaintiff never sent any form of communication to the Capital Defendants protesting the registration or redirection of the domain names at issue. In contrast to some of the above referenced cases, the evidence is undisputed that, by the time this lawsuit was filed, the Capital Defendants had already stopped the redirection of the infringing domain names to Capital's website. This is not a case of flagrant disregard, despite notice or warning. Instead, it is a case of the Defendants acting on bad advice, and acting on a good faith belief that there was nothing wrong with what they were doing. This is precisely the scenario the safe harbor provision was enacted to address.

## SUMMARY AND CONCLUSION

The application of the safe harbor does not depend upon whether the defendants' actions were lawful; rather, it depends upon whether the defendants believed and had reasonable grounds to believe their actions were lawful. The evidence in the record provides convincing support that the Capital Defendants had objectively reasonable grounds to believe their conduct was lawful. The

Defendants hired an expert consultant in the relevant field and reasonably relied on his purported knowledge in taking action. Ultimately, the Capital Defendants are victims of receiving bad advice, not acting in bad faith. Accordingly, the Capital Defendants should be afforded the protection of the ACPA's safe harbor provision. Furthermore, Plaintiff's contention that mere commercial use prevents a Defendant from using the safe harbor provision is unsupported. This argument is in direct conflict with the plain language of the ACPA and not supported by federal precedent discussing this issue.

Respectfully submitted,

**MaddenSewell, LLP**

By:_____
Mark A. Hendrix
State Bar No. 09460500
Four Hickory Centre
1755 Wittington Place, Suite 300
Dallas, Texas 75234
Telephone: (972) 484-7780
Facsimile: (972) 484-7743

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on the 4th day of February, 2008, a true and correct copy of the foregoing has been forwarded via electronic and facsimile transmission, upon the following:

David L. Burgert
Porter & Hedges, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

Jami Meador
Scott Shane
Straasburger & Price, LLP
1401 McKinney Street, Suite 2200
Houston, Texas 77010-4035

_____
Mark A. Hendrix