IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **KIVA KITCHEN & BATH, INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| § | |
| v. § | |
| § | |
| **CAPITAL DISTRIBUTING, INC.** and § | |
| **JOHN MICHAEL DAVIS** a/k/a § | |
| **MICHAEL DAVIS** a/k/a **JOHN** § | **CIVIL ACTION NO. 4:06-cv-02562** |
| **DAVIS** § | |
| § | |
| Defendants/Third Party § | |
| Plaintiffs, § | |
| § | **JURY TRIAL DEMANDED** |
| and § | |
| § | |
| **BRINGMEBIZ, INC.,** and **TODD** § | |
| **MCCALLY** § | |
| § | |
| Third Party Defendants. § | |
| § | |
| § | |

**PLAINTIFF'S MOTION FOR ASSESSMENT OF
STATUTORY DAMAGES UNDER
THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT**

Plaintiff Kiva Kitchen & Bath, Inc. ("Kiva") files this Motion for Assessment of Statutory Damages under the Anticybersquatting Consumer Protection Act ("ACPA") against Defendants Capital Distributing, Inc. ("Capital")

and John Michael Davis ("Davis") (collectively the "Capital Defendants") and in support thereof respectfully states as follows:

## I. INTRODUCTION

Kiva brought this trademark infringement suit against the Capital Defendants because they registered Kiva's trademarks as domain names and subsequently forwarded visitors to certain of those domains to their own website. After a five-day trial, the jury found for Kiva on almost every issue. *See* Exhibit A, jury verdict (Doc. No. 145). Regarding the ACPA, the jury found that the Capital Defendants violated the statute through their registration of, trafficking in, and/or use of eight domain names containing Kiva's marks. Exhibit A at 22. That jury finding entitles Kiva to elect to recover the damages determined by the jury or damages ranging from $1,000 to $100,000 per domain name considered by the Court to be just. Kiva now moves the Court to assess damages under the ACPA to permit Kiva to make its election of damages. Kiva requests the maximum statutory damages of $800,000 in light of the following circumstances: (1) the evidence showing that the Capital Defendants used Kiva's marks to gain an unfair competitive advantage over it; (2) the fact that Kiva's actual damages were difficult to calculate, largely as a result of defendants' actions; (3) the evidence showing the Capital Defendants' conduct to be willful and egregious; (4) the jury's

finding that this case is an exceptional one; and (5) the jury's determination that Kiva is entitled to punitive damages against Defendant Davis.

## II. ARGUMENT

### A. Recovery Under the ACPA

The ACPA provides that a prevailing "plaintiff may elect, at any time before final judgment . . . to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Although the statute does not list factors to consider in setting the amount of statutory damages, decisions of other courts offer some guidance on circumstances in which the maximum damages are appropriate. For instance, some courts have awarded the maximum statutory damages when the defendant used the infringing domain name to sell the same or similar products that the plaintiff sells, effectively using the plaintiff's own marks to compete against it. *See Aztar Corp. v. MGM Casino*, No. 00-833-A, 2001 WL 939070, at *5 (E.D. Va. Apr. 9, 2001) (attached as Exhibit B); *see also Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d at 511, 508-09 (E.D. Va. 2003).

The *Aztar* defendant registered a domain name encompassing the trademark of famous casinos in Las Vegas and Atlantic City, "Tropicana." *Aztar*, 2001 WL 939070, at *3. The defendant then created an online casino, attempting to mislead

Internet customers into believing that the website was affiliated with the plaintiff. *Id.* at *5. The court determined that the defendant's bad faith efforts to deceive Internet users and profit from the good will of the plaintiff's mark merited the maximum damages under the ACPA. *Id.* at *6. Similarly, the *Graduate Management* court based its award of the maximum statutory damages, in part, on the defendant's use of the plaintiff's trademark in his domain name as a step in his plan to divert consumers from the legitimate site to his own. *Graduate Mgmt.*, 267 F. Supp. 2d at 511, 513.

Courts have also determined that the maximum ACPA damages are warranted when the plaintiff's actual damages are difficult to determine. *See, e.g., Electronics Boutique Holdings Corp. v. Zuccarini*, No. Civ. A. 00-00-4055, 2000 WL 1622760, at *7-8 (E.D. Pa. Oct. 30, 2000) (discussing the grounds for awarding the maximum statutory damages and emphasizing that "the actual damages suffered" by the plaintiff are "incalculable") (attached as Exhibit C). Other courts assess the maximum statutory damages when the circumstances indicate that such an award is simply just. For example, when a defendant registered a domain name including the plaintiff's "Golden Nugget" mark to host a pornographic website with links to online casinos in competition with the plaintiff, the court determined that the maximum award was "just." *Mirage Resorts, Inc. v. Cybercom Prods.*, 228 F. Supp. 2d 1141, 1142 (D. Nev. 2002).

Significantly, most cases meriting the maximum statutory damages are also found to be "exceptional" cases supporting attorneys' fees awards. *See Mirage Resorts*, 228 F. Supp. 2d at 1142-43; *Aztar*, 2001 WL 939070, at *6; *Electronics Boutique*, 2000 WL 1622760, at *8; *see also* 15 U.S.C. § 1117(a) (providing for the recovery of reasonable attorneys' fees in exceptional cases). This is logical since cases are "exceptional" when "the violative acts can be characterized as malicious, fraudulent, deliberate, or willful." *Pebble Beach*, 155 F.3d 526, 555 (5th Cir. 1998) (quote omitted). Such a "high degree of culpability," *id.* at 556, makes an award of the maximum damages just.

### B. Maximum Statutory Damages in This Case

The jury's finding that the Capital Defendants committed eight violations of the ACPA entitles Kiva to an award of statutory damages ranging from $8,000 to $800,000. Considering the factors utilized by other courts and the evidence in this case, an award of the maximum legal damages is warranted here.

Kiva and Defendant Capital both sell high-end kitchen appliances. The Capital Defendants' use of the infringing domain names, thus, employed Kiva's own marks in direct competition against it, grounds supporting the maximum statutory award in *Aztar* and *Graduate Management*.[1]

---

[1] In earlier briefing, the Capital Defendants attempted to distinguish such cases. For instance, the Capital Defendants pointed out that this is not a default judgment case like *Aztar*. They also argued that their stolen domain names were not used to sell unauthorized or

5

Additionally, Kiva's damages were difficult to prove, largely as a result of the Capital Defendants' own conduct.[2] For example, the Capital Defendants intentionally allowed their website hosting company to destroy log files which would have demonstrated the amount of website traffic from the infringing domain names that was being redirected to Capital's website. *See generally* Plaintiff's Motion for Adverse Inference and Sanctions Against Capital Defendants (Doc. No. 90); Plaintiffs' Reply to the Response by Capital Defendants to Plaintiff's Motion for Adverse Inference and Sanctions (Doc. No. 106). In addition, despite their obligations under Rule 34 of the Federal Rules of Civil Procedure and an Order

---

counterfeit Kiva products or even to sell products on the Internet. True enough. These details are, however, immaterial. The fact remains that the Capital Defendants engaged in conduct that was similarly egregious to that of the defendants in the cited cases—albeit with different particulars. They used their competitor's own marks to gain an unfair competitive advantage over it, specifically, by transferring Internet users seeking Kiva products to defendants' own website.

[2] In prior briefing, the Capital Defendants disputed the notion that high statutory damages are appropriate when the plaintiff's economic damages are difficult to prove, citing two cases: *Anlin Indus., Inc. v. Burgess*, No. 1:05cv1317 DLB, 2007 WL 715687 (E.D. Cal. Mar. 5, 2007) (Exhibit D); *International Bancorp, L.L.C. v. Societe Des Bains De Mer Et Du Cercle Des Estrangers A Monaco*, 192 F. Supp. 2d 467 (E.D. Va. 2002), *aff'd on other grounds*, 329 F.3d 359 (4th Cir. 2003). Neither case supports the Capital Defendants' point. First, the parties in *Arlin* and *International Bancorp* were not competitors. *Arlin*, 2007 WL 715687, at *3; *International Bancorp.*, 192 F. Supp.2d at 471. In fact, in *Arlin*, the defendant sold the plaintiff's products so the plaintiff did not even *allege* damages. *Arlin*, 2007 WL 715687, at *9. Second, neither *Arlin* nor *International Bancorp* addressed the problems of calculating or proving damages. *See generally, Arlin*, 2007 WL 715687; *International Bancorp*, 192 F. Supp.2d 467. Third, neither case involved actual diversion from the illegally registered domain name to the defendants' websites. *Arlin*, 2007 WL 715687, at *9. Finally, there were no findings in *Arlin* and *International Bancorp* that the defendants acted maliciously or fraudulently or that the case was exceptional. *Arlin*, 2007 WL 715687, at *10; *International Bancorp*, 192 F. Supp.2d at 491. Thus, the cases the Capital Defendants cited are not instructive on the issue of incalculable damages.

compelling production, the Capital Defendants refused to provide their customer and sales records in an electronic form, thereby depriving Kiva of the ability to work with the data and apportion Capital's gross sales between infringing and non-infringing sales. *See id.* at 13 (citing the Court's Compel Order (Doc. No. 49)). When damages are difficult to establish, the courts have indicated a desire to err on the side of benefiting the plaintiff, rather than the infringing defendant. *See Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 555 (5th Cir. 1998) (explaining that if the profits from the infringing mark cannot be separated from the defendant's other profits, the plaintiff, rather than the defendant, is entitled to the "windfall" of all the defendant's profits); *see also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942); *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 261-62 (1916) (emphasizing that a wrongdoer "cannot take advantage of his own wrong," the Court held that when profits cannot be apportioned between infringing and non-infringing activity, all the profits should go to the trademark holder). Because Kiva's damages could not be easily calculated due to the defendants' actions, an award of the maximum statutory damages is appropriate.

A variety of circumstances show that the maximum ACPA award would be just in this case. In his trial testimony, Defendant Davis admitted that he registered not just Kiva's, but many of his other competitors' trademarks as domain names.

7

Exhibit E, Excerpts from the transcript of John Michael Davis's trial testimony, at 37-44; Exhibit F, Declaration of Adam D. Pogach. Davis also admitted that he registered Kiva's and his other competitors' domain names in order to tie up those names so that his competitors could not use them. Exhibit E at 46:24-47:5; 46:18-21. Davis further conceded—but only when pressed by the Court's questioning—that he registered the domain names with the intent to profit from others' customers. Exhibit E at 49:15-50:3. The willful and deliberate nature of the Capital Defendants' acts is revealed in Davis's acknowledgement at trial that he believes that using competitors' trade names to obtain customers is unethical. Exhibit E, at 34:11-14; 29:12-15.

Despite his acknowledgement of the unethical nature of his conduct, Davis had no qualms about his actions for months. Then, in July 2006, he became "embarrassed" about forwarding customers to his own website—when confronted about it. Exhibit E, at 53:10-55:19. He then changed the registrations to forward the misappropriated domain names to news and other "generic" sites. *Id.* In fact, the Capital Defendants continued to forward visitors to the Jarrell Appliance sites to the Dallas News or to a site including Capital's name throughout this litigation, directing them away from Kiva's site. Exhibit E, at 50:5-51:12.

Davis's embarrassment did not prompt him to surrender ownership of the stolen domain names; he continued to prevent his competitors from using them.

Exhibit E, at 55:25-56:6. Davis did not transfer the domain names with Kiva's marks to Kiva until approximately six weeks before the 2008 trial. Exhibit E, at 55:25 – 56:17. Plainly, Davis showed little remorse and no real desire to make amends for his acknowledged unethical and illegal behavior. To the contrary, Davis's testimony evidences his continued attempts to deceive the fact finder regarding his bad faith intent. *Compare* Exhibit E, at 69:14-70:8 (testifying that he opened a second account with Network Solutions using the name "John Davis" because he was at home and did not have his log-in and password for his existing "Michael Davis" account) *with* Exhibit G, Testimony of Ed Schipul, at 49:5-51:6 (explaining that when Davis initiated his "John Davis" account, he logged in from the same office computer that he used when transacting on his "Michael Davis" account); Exhibit F.

Finally, the jury found—by clear and convincing evidence—that this is an exceptional case and one justifying punitive damages under Texas law against Davis. The same willful, malicious, fraudulent, deliberate, and/or grossly negligent conduct supporting those findings makes this an appropriate case for the maximum statutory award.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiff Kiva Kitchen & Bath, Inc. respectfully asks this Court to assess damages under the ACPA against Defendants

9

Capital Distributing, Inc. and John Michael Davis in the amount of $800,000, constituting $100,000 for each of the eight domain names.

Dated: February 12, 2008.

Respectfully submitted,

By: /s/ David L. Burgert
David L. Burgert
Attorney-in-Charge
Federal I.D. No. 2084
State Bar No. 03378300
Porter & Hedges, LLP
1000 Main Street, 36th Floor
Houston, TX 77002-6336
Telephone: (713) 226-6000
Facsimile: (713) 228-1331
E-Mail: dburgert@porterhedges.com

***ATTORNEYS FOR PLAINTIFF
KIVA KITCHEN & BATH, INC.***

OF COUNSEL:

PORTER & HEDGES, L.L.P.
Adam D. Pogach
Federal I.D. No. 634567
State Bar No. 24048734
1000 Main Street, 36th Floor
Houston, TX 77002-6336
Telephone: (713) 226-6000
Facsimile: (713) 228-1331
E-mail: apogach@porterhedges.com

## CERTIFICATE OF CONFERENCE

On February 12, 2008, counsel for Plaintiff Kiva Kitchen & Bath, Inc. conferred with Mark A. Hendrix, counsel for Defendants Capital Distributing, Inc. and John Michael Davis a/k/a Michael Davis a/k/a John Davis about this motion. Mr. Hendrix advised that he opposes this motion.

/s/ Adam D. Pogach<br>Adam D. Pogach

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of February, 2008, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mark A. Hendrix
MADDENSEWELL, LLP
Four Hickory Centre
1755 Wittington Place, Suite 300
Dallas, Texas 75234
Telephone: (972) 484-7780
Facsimile: (972) 484-7743

Jami Meador
STRASBURGER & PRICE, LLP
1401 McKinney Street, Ste. 2200
Houston, Texas 77010-4035
Telephone: (713) 951-5600
Facsimile: (713) 951-5660

Olan Boudreaux
FISHER, BOYD, BROWN, BOUDREAUX & HUGUENARD, LLP
2777 Allen Parkway
14th Floor
Houston, TX 77019
Phone: (713) 400-4030
Mobile: (713) 828-2427
Facsimile: (713) 400-4050

/s/ David L. Burgert<br>David L. Burgert

1266036v2